STATE OF NEBRASKA, APPELLEE, v. LANNY D. FRENCH, APPELLANT.

279 N. W. 2d 116

Filed May 15, 1979. No. 42244.

Hal W. Anderson of Berry, Anderson & Creager, for appellant.

Paul L. Douglas, Attorney General, and J. Kirk Brown, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

The defendant was convicted on a charge of possession of marijuana with intent to deliver and sentenced to imprisonment for 1 year. The defendant has appealed. The issue on appeal is whether evidence was obtained as the result of an illegal search and seizure and should have been suppressed.

At about 9 p.m., on September 28, 1977, Jefferson County deputy sheriffs Earhart and Anderson responded to a telephone report of a possible trespass at a vacant farmhouse located near Reynolds, Nebraska. The deputies arrived about dusk and stopped

their car at the gate to the farmhouse lane. When they stopped at the gate they heard a motor running, saw some lights on in the farmhouse, saw a fire in the area outside the front of the house, and noticed three or four people in the area. Deputy Earhart radioed their location to the sheriff's office and reported that the deputies would check out the trespass complaint.

As the deputies got out of their car they noticed that the lights went out in the farmhouse and people were moving around, and as the deputies started up the lane on foot they saw people running. The deputies, as they approached the farmhouse, called out and identified themselves as officers and announced that they wanted to talk to the people. As they approached the house the deputies noticed two pickup trucks and a motorcycle parked in front of the house. The deputies saw a pistol, a shotgun, and a radio scanner on the seat of one of the trucks. The deputies made a cursory search of the premises outside the house. Deputy Earhart then discovered the defendant under one of the trucks. The defendant was frisked and handcuffed and Deputy Earhart then took the defendant down the lane and put him in the police car, while Deputy Anderson remained at the house. Using his flashlight, Deputy Anderson looked through the windows of the house, saw sleeping bags, personal effects and clothes, and also saw a shotgun in the kitchen. The kitchen door was locked with a padlock on the outside. Thinking that someone might still be in the house, Deputy Anderson kicked or knocked the kitchen door in, went into the kitchen, picked up the shotgun, and carried it outside.

Meanwhile, Deputy Earhart was taking the defendant to the police car. They disagree as to what they heard on the way to the car. The defendant testified he heard Deputy Anderson kick in the door and the splintering of wood, and recognized the

sounds of the opening of the kitchen door, and assumed that Earhart heard them also. Deputy Earhart did not remember hearing any noises. On the way to the car the defendant told Earhart he had some identification and a lease to the property in his wallet. When they reached the police car they got in the car, Deputy Earhart examined the lease and identification, and determined that the lease was made out to the defendant.

At this point again the evidence is in conflict. Earhart did not mention any purpose for entering the house, nor tell the defendant he had a right to refuse. Earhart testified he asked defendant if the officers could have permission to go into the house and that the defendant said: "Yes." The defendant testified he assumed that Earhart had also heard Anderson break into the house and in response to the request for permission to go into the house the defendant said: "Well, yeah. It wouldn't matter anyway." Earhart confirmed that response, but said it was made in response to a second request.

Earhart then drove the car up to the house and they saw that Deputy Anderson had already broken the door in. Deputy Earhart walked from the car over to the house and talked to Anderson. Earhart then returned to the car and said to the defendant: "You would have given us consent anyway, wouldn't you?" The defendant answered: "No." The officers nevertheless went into the house and conducted a room by room search looking for trespassers. They gave no other reason to search the house. They found no trespassers in the house but they discovered a quantity of marijuana. The officers confiscated approximately 1,000 pounds of processed and unprocessed marijuana which was used as evidence in this case.

Motion to suppress was overruled and jury trial was waived. Upon trial to the District Court the evidence was received over objection, and the defend-

ant was found guilty and sentenced to imprisonment for 1 year. The issue on appeal is whether or not the physical evidence seized at the farmhouse was the result of an illegal search and seizure.

The defendant contends that he did not voluntarily consent to the search; that his words, which were interpreted as consent were not intended as such, but were the result of duress or coercion, express or implied; and that whatever consent might have been inferred by the officers was revoked before the search began. The State concedes the officers had no warrant to search the farmhouse, nor any probable cause or reason to suspect there was marijuana in the farmhouse at the time. The sole justification for the search in this case rests on the consent of the defendant.

In Schneckloth v. Bustamonte, 412 U. S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854, the United States Supreme Court held: "[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent."

Whether or not consent to search was freely and intelligently given is a question of fact to be determined from the totality of all the circumstances surrounding it. State v. Van Ackeren, 194 Neb. 650, 235 N. W. 2d 210. The State has the burden of establishing the legal sufficiency of a consent to a search and seizure. State v. Holloway, 187 Neb. 1, 187 N. W. 2d 85.

In the present case the evidence established that

Deputy Earhart pulled the defendant out into the open, frisked him, handcuffed him, led him 100 yards down the lane, and put him in the police car. During that walk the defendant heard Deputy Anderson break open the kitchen door. While the defendant was sitting in the police car handcuffed he was asked for permission to go into the house, although no purpose for such entry was suggested. The defendant responded: "Well, yeah. It won't make any difference anyway."

Whether a person whose consent is sought was in the custody of the police at the time the consent was given is an important consideration in determining voluntariness, duress, or coercion. "While some courts, particularly on the federal level, have deemed 'consent' by one in police custody as almost per se invalid, the prevailing view falls somewhat short of this, although there is general agreement that custody makes the prosecution's burden particularly heavy." 2 LaFave, Search and Seizure, § 8.2, at p. 643.

Even if Deputy Earhart might have believed, at that point, that the defendant had given voluntary, knowing, and intelligent consent to enter the house, Earhart discovered very shortly thereafter that Deputy Anderson had already broken into the house without any authorization whatever. Deputy Earhart was sufficiently uncertain about the consent situation, in view of the circumstances, that he returned to the defendant and said: "You would have given us consent anyway, wouldn't you?" The defendant answered: "No." Earhart confirmed that answer on cross-examination.

Under the circumstances here the defendant's unequivocal "no" could only be reasonably interpreted as revoking whatever consent might have previously been given, if any. The better view is that while a consent to search is not terminated merely by a worsening of the consenting party's position, a con-

sent may be withdrawn or limited at any time prior to the completion of the search. See, 2 LaFave, Search and Seizure, § 8.1, at p. 634. At the time the defendant responded "no" to the question as to whether he would have given any consent if Deputy Anderson had not already broken into the house, the officers had not yet begun the search of the house. It was neither reasonable nor justifiable for them to conclude that they had the voluntary and intelligent consent of the defendant to make a search. The search was unreasonable. The motion to suppress should have been granted.

The judgment and sentence of the District Court are vacated and the cause remanded to the District Court.

JUDGMENT AND SENTENCE VACATED.
CAUSE REMANDED TO DISTRICT
COURT.