**UNITED STATES of America**

v.

**Sylvester W. BRELAND, Edward J. Heyward.**

**Crim. No. 89–0093 JGP.**

United States District Court, District of Columbia.

May 30, 1989.

Richard Edwards, Asst. U.S. Atty., Washington, D.C., for plaintiff.

Sylvester W. Breland, Richard Stern, Edward J. Heyward, Patrick Donohue, Washington, D.C., for defendants.

## MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

The defendants are charged with unlawful possession with intent to distribute 50 grams or more of cocaine base (21 U.S.C.A. §§ 841(a) and 841(b)(1)(A)(iii)), use of a firearm in aid of drug trafficking (18 U.S.C.A. § 924(c)) and aiding and abetting (18 U.S.C. A. § 2). The case is now before the Court on Breland's Motion to Suppress Tangible Evidence and Statements and Motion to Sever Defendants, and Heyward's Motion to Suppress. The Court heard the motions on May 8, 1989. After giving careful consideration to the motions, the Court concludes that the motions should be denied.

I

Briefly, the underlying facts are as follows: On or about March 2, 1989, officers of the Metropolitan Police Department received a tip that two individuals were selling drugs in a basement room located at 4425 Burroughs Avenue, Northeast, in the District of Columbia. Investigators Howard and Delauder, together with Officer Stewart and three other officers went to the address. Delauder knocked on a door located in the basement and a voice inside responded "Who is it." Delauder replied, "The police." Immediately thereafter, Heyward opened the door approximately two feet wide. As soon as Heyward opened the door, the officers observed what appeared to be a storage room, with boxes, tools, and spare pipes visible. Nothing about the room resembled living quarters. The officers did not push open the door. The police asked Heyward who lived there; Heyward did not respond but slowly backed into the room. As he walked into the room, Howard withdrew his weapon from its holster. The other officers stepped inside the room, following Heyward and Howard. Stewart testified that she had her gun out before she stepped into the room and that she thought the other officers had drawn their weapons, but she did not have a full opportunity to observe the actions of the other officers. Once they were approximately five feet inside the room, the officers observed Breland, to the left, at a table with a gun and drugs on the table in plain view. When Breland appeared to reach for the gun, the officers instructed him not to do so. He was taken into custody and it was learned that Heyward also had a weapon.

Only Howard and Stewart testified at the suppression hearing. Neither defendant lived at that address but Heyward had two keys to the basement room door in his

possession. One of the officers testified that Heyward stated that the resident manager had given him and Breland the keys to the room in exchange for drugs and money. The officer stated that the resident manager denied that he had received drugs and money in exchange for the keys and permission to use the room. The resident manager said that no report had been made that the keys were missing and that he had no notice that anyone was using the basement room without authorization.

## II

Breland moves to sever because some statements made by Heyward would implicate Breland. *See Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The government has advised the Court and the defendants that it will redact any part of the statements which might implicate Breland; therefore, the issue is moot. The motion to sever defendants is denied.

Breland also seeks to suppress statements he made to the police in which he allegedly said that he knew how serious the charges are, that it was the price of doing business, that people were killing each other in New York and that the drugs belonged to him. The fact is, however, that prior to making the statements Breland had been advised of his rights and had filled out all but one answer on the "rights card," the P.D. 47. Although he did not fill in the answer to the question; "Do you wish to answer any questions?", he did write that he was willing to answer questions without having an attorney present, that he had been advised of his rights and that he understood those rights. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The defendant offered nothing to rebut the evidence offered by the government.

The Court finds that the defendant was advised of his *Miranda* rights, that he voluntarily signed the "rights card" and that he voluntarily made the incriminating statements attributed to him. The motion to suppress his statements is denied.

The final motions are the motions to suppress evidence made by both defendants. These motions present primarily two issues. First, do the defendants have standing to argue the motions, or stated differently, did the defendants have a legitimate and reasonable expectation of privacy in the basement room? *See Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Second, assuming that the defendants have standing to object to the search, did they consent to the search of the room?

An often cited case on the first issue is *United States v. Haydel*, 649 F.2d 1152 (5th Cir.1981). There, the court noted that:

> Other factors to be weighed [in addition to property rights] include whether the defendant has a possessory interest in the thing seized or the place searched, whether he has the right to exclude others from that place, whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises.

649 F.2d at 1155 (citations omitted). *Accord: United States v. Robinson*, 225 U.S. App.D.C. 282, 698 F.2d 448 (1983); *United States v. Briones–Garza*, 680 F.2d 417 (5th Cir.1982).

Under the facts of the instant case, the Court finds that the defendants did not have a reasonable expectation of privacy. First, the defendants did not live at that address, and although they were there and had keys to the room in their possession, there is no evidence as to how and when they obtained possession of the keys. While Heyward told an officer that the resident manager had given them the keys in exchange for drugs and money, the resident manager told an officer that he did not do so and that he did not know that the defendants were using the room. Neither the defendants nor the resident manager testified. In the view of the Court, the two contradictory statements cancel one another since, without live testimony, the Court is unable to weigh the creditability of the statements. Furthermore, the defendants were present in the courtroom and could

have testified in support of their contention that they obtained the keys from the resident manager. Nothing in the record lends support to a contention that the defendants were "guests" of the owners of the property. Second, there is no evidence as to the length of time that the defendants had been at that address. The evidence suggests that once the officers were advised that two men were selling drugs at the address, they almost immediately proceeded to the address and arrested the defendants. Since the room appeared to be nothing more than a storage room, it seems clear that the defendant were not living at the address. Third, nothing in the record would support a contention that the defendants had the right to exclude others from the room. Fourth, while the door was closed, it was apparently unlocked. Fifth, the defendants have demonstrated no connection with the room and have not demonstrated that they were legitimately on the property.

Under the above circumstances, the Court cannot find that the defendants had a reasonable expectation of privacy in the property and therefore, they do not have standing to challenge the search. It is the defendants who have the burden of proving that the search was illegal and that they had a legitimate expectation of privacy in that room. *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed. 2d 633 (1980). The defendants have failed to meet that burden.

■ Assuming for the moment that the defendants have standing, the Court finds that the defendants consented to the entry of the police into the room in any event. Delauder knocked on the door, Heyward asked "Who is it" and an officer responded "The police." Heyward immediately opened the door. When an officer asked whether he lived there, Heyward did not respond, rather, he backed away and allowed the officers to step inside. Once inside, the officers observed the drugs and weapon on the table and took appropriate action.

The defendants contend that they did not consent to the entry of the officers but they can find no support for that contention in the record. They argue that they allowed the officers to enter the room because the officers had pulled their guns, however, the record is quite clear that the officers knocked, and in response to Heyward's question, "Who is it", responded, "The police." Notwithstanding that he knew the police were on the other side of the door and that drugs and weapons were in the room, Heyward opened the door without any apparent objection from Breland. Up to this time, it is clear that Heyward had not observed any weapons and did not know how many officers were on the scene. When Heyward opened the door, he did not merely crack the door, rather; he opened it two feet. This is consistent with consent, otherwise, one would suspect that the door would not have been opened in the first instance, and if opened because the defendants were not sure whether the police were really at the door, the door would have been opened only enough so that the defendants could determine the identity of their unexpected visitors. When Heyward was asked whether he lived there and then stepped back, the first officer had not drawn his weapon; he did so only after walking into the room. While Officer Stewart testified that she had drawn her weapon before entering the room, she also testified that she was the last officer in the room. By that time the first officers were in the room and the drugs were probably in plain view. Since she was the last officer entering the room, it seem unlikely that Heyward saw her weapon.

While the defendants contend that they allowed the officers into the room due to the show of force, presumably the guns, they did not offer any evidence to support that contention. Finally, the fact that the defendants willingly made statements even after being advised of their rights, supports the finding that they consented to the entry and search by the officers. "To determine whether consent is voluntary, a court must apply a 'totality of all the surrounding circumstances' test." *United States v. Lloyd*, 868 F.2d 447, 451 (D.C.Cir. 1989). Here, there was no show of force or

aggressive action by the police officers. While it is obvious that the defendants would have preferred that the police had not entered the room, that is not the test upon which cases of this nature must be decided.

The Court finds that the defendants consented to the entry of the officers.

In sum, the Court finds that the defendants did not have a legitimate expectancy of privacy, and moreover, that in any event, they consented to the entry of the officers into the room.

It is hereby

ORDERED that Breland's motion to sever defendants is denied, and it is further

ORDERED that Breland's motion to suppress statements it denied, and it is further

ORDERED that the defendants' motions to suppress evidence are denied.