STATE OF NEBRASKA, APPELLEE, V. TIMOTHY D. PRAHIN,
APPELLANT.
455 N.W.2d 554

Filed May 18, 1990.    No. 89-786.

Kirk E. Naylor, Jr., and Kent E. Florom, Keith County Public Defender, for appellant.

Robert M. Spire, Attorney General, James H. Spears, and Donald Kohtz for appellee.

CAPORALE, J.

Defendant-appellant, Timothy D. Prahin, was convicted of speeding, in violation of Neb. Rev. Stat. § 39-662(2)(f) (Reissue 1988), and of possessing a controlled substance (cocaine) with the intent to deliver same, in violation of Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 1988). He was thereafter sentenced to imprisonment for a period of from 10 to 20 years. He claims the district court erred in overruling his motion to suppress and in imposing an excessive sentence. We vacate the sentence and remand for resentencing.

On December 1, 1988, Daniel Wilson, a Nebraska State Patrol officer, was traveling eastbound on Interstate 80 in Keith County, Nebraska, when the radar device in his patrol vehicle registered the speed of a large black Lincoln Continental automobile traveling westbound on the Interstate at 76 miles per hour, in violation of the posted speed limit of 65 miles per hour. Wilson turned his patrol vehicle around in pursuit and noticed that the Lincoln bore Tennessee license plates. At 11:50 a.m., Wilson stopped the Lincoln, which was driven by Prahin.

When Wilson asked Prahin for his motor vehicle operator's license and vehicle registration, Prahin produced the vehicle registration and a Michigan identification card. Prahin explained that he had a California operator's license but had lost it and that he now lived in Michigan. The Lincoln was registered to a Frank Green in Tennessee, but a Florida parking sticker was affixed to the windshield.

Wilson informed Prahin that he was stopped for speeding and asked Prahin to accompany him to the patrol vehicle.

Prahin entered the passenger side of the patrol vehicle and, when inside, stated that he had Green's permission to drive the Lincoln but did not know how Green could be contacted. Wilson conducted a check on Prahin and on the Lincoln, discovered no outstanding warrants on either, and confirmed that the Lincoln was registered in Green's name.

After Prahin had been in Wilson's patrol vehicle for about 5 minutes, Wilson issued Prahin a citation for speeding and a violation card for failure to have an operator's license, and returned Prahin's identification card and vehicle registration. Before Prahin left the patrol vehicle, Wilson asked him, " 'Excuse me, by the way, would it be all right [for me] to take a look inside of your vehicle for narcotics, drugs, weapons and/or large amounts of cash.' " Wilson explained that "the interstate system through Keith County was having a large amount of problems with . . . those items going through the county."

When Prahin responded "Yes" to Wilson's request, Wilson showed Prahin a "PERMISSION FOR SEARCH AND SEIZURE" form, confirmed that Prahin could read English, and gave Prahin time to read the form, after which both men signed it. According to Wilson, Prahin understood the form before signing it. The form reads that Prahin "voluntarily authorize[s]" Wilson to search the Lincoln and further authorizes Wilson "to remove from my said . . . motor [vehicle] . . . whatever documents, articles, or other items of property whatsoever, which [he] deem[s] pertinent to [his] investigation . . . ." The final paragraph of the form states:

> I AM GIVING THIS WRITTEN PERMISSION to these Nebraska State Patrol Officers freely and voluntarily, without any threats or promises having been made to me, and after having been informed by these officers that I have the right to refuse to permit this search and seizure, and that any property seized may be used against me in the event of prosecution.

After Prahin had signed the consent form, Wilson stated, " 'Let's go ahead and start searching your vehicle.' " At Wilson's request, Prahin opened the trunk of the Lincoln, which contained a lone traveling bag Prahin acknowledged to

be his. Again at Wilson's request, Prahin removed the bag from the trunk, placed it on the shoulder of the Interstate, and unzipped it halfway, stating that "there was nothing in the traveling bag except for some miscellaneous clothes . . . ." Wilson unzipped the bag the rest of the way, pulled the sides of the bag apart, and observed inside "two separate packages wrapped in a brown paper-like substance with Magic Marker markings on them." On one of the packages was written "3030" and "A-I-R-E," and on the other package was written "114," "P-E-T-A-L-O," and "III." The packages were approximately 8 inches long, 7 inches wide, and $1^1/2$ inches thick.

Because Wilson believed, based on the markings, that the packages contained cocaine, he arrested Prahin and advised him of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Wilson testified that "[t]he only way that I have ever seen cocaine packaged was in the manner similar to that" and that based on his past training, he was 99.9 percent certain that the packages contained cocaine. Laboratory tests later revealed that the packages did in fact contain cocaine. At trial, the parties stipulated that the amount of cocaine found in the packages "denotes distribution and not personal use."

Wilson admitted that from the moment he stopped Prahin, he intended to try to get Prahin to consent to a search of the Lincoln. He further acknowledged that when he asked to search Prahin's automobile, he was suspicious that Prahin was a "courier of narcotics" or had contraband in his vehicle. Wilson testified that although Prahin was not free to leave from the time of the initial stop of the vehicle until the time the speeding citation was issued, Prahin was free to leave when Wilson asked him to sign the consent form. On the other hand, Prahin testified that he did not believe he was free to leave from the time Wilson asked him to enter the patrol vehicle until the time he was placed under arrest.

Pursuant to Neb. Rev. Stat. § 29-822 (Reissue 1989), Prahin moved to suppress all evidence seized from the Lincoln, including the traveling bag and its contents, on the basis that there was no legal basis for the search. Prahin also objected to the admission of the traveling bag and the two packages of

cocaine at trial on the basis that the items were products of an illegal search and seizure. The district court refused to suppress the evidence.

Prahin argues that he was illegally placed under arrest at the time he entered the patrol vehicle, that his subsequent consent to the search of his vehicle was tainted by that illegal arrest, and, thus, that the cocaine seized from his vehicle should have been suppressed.

The validity of Wilson's search of Prahin's automobile, trunk, and traveling bag depends upon whether Prahin's consent was given voluntarily and absent a preexisting illegality which may be said to have tainted the consent. Wilson did not have a search warrant, and the State does not argue, nor does it appear, that the search was incident to arrest, see *State v. Roach*, 234 Neb. 620, 452 N.W.2d 262 (1990) (pursuant to a lawful custodial arrest, law enforcement officers may conduct a warrantless search of the person arrested and of the immediately surrounding area in order to remove any weapons that the arrestee may use to resist arrest or effect an escape and in order to prevent the concealment or destruction of evidence), or that the search was within the permissible scope of an investigatory stop, see *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) (when an officer possesses a reasonable belief based upon specific and articulable facts that a suspect during an investigation may be armed and presently dangerous to the officer or others, the officer may conduct a carefully limited search of the outer clothing of such person in an attempt to discover weapons which may be used to assault him).

The first question we encounter is whether a seizure within the meaning of the fourth amendment took place when Prahin was asked to accompany Wilson to the patrol vehicle. We conclude that it did. A person is seized within the meaning of the fourth amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980), *reh'g denied* 448 U.S. 908, 100 S. Ct. 3051, 65 L. Ed. 2d 1138; *INS v. Delgado*, 466 U.S. 210, 104 S. Ct. 1758, 80 L. Ed. 2d 247 (1984) (seizure has taken place if circumstances of

encounter with police are so intimidating as to demonstrate that a reasonable person would have believed himself or herself not free to leave); *State v. Boysaw*, 228 Neb. 316, 422 N.W.2d 346 (1988) (seizure occurs when reasonable person believes that his or her freedom of movement has been restrained, either by means of physical force or by a show of authority); *State v. LaChappell*, 222 Neb. 112, 382 N.W.2d 343 (1986); *State v. Beard*, 221 Neb. 891, 381 N.W.2d 170 (1986); *State v. Horn*, 218 Neb. 524, 357 N.W.2d 437 (1984) (primary consideration in making objective determination as to whether seizure has occurred is whether or not the defendant was free to choose between terminating or continuing the encounter with law enforcement officers). Under the circumstances, having just been stopped for speeding, a reasonable person in Prahin's position would have believed that he or she was not free to leave.

In arguing that the seizure of the automobile he was driving was unlawful, thereby tainting his consent to the search, Prahin refers us to *Florida v. Royer*, 460 U.S. 491, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). Therein, the U.S. Supreme Court affirmed the appellate court's conclusions that the defendant was illegally detained as a pretext to conduct a search of his luggage and that the defendant's consent to the search, obtained during the illegal detention, was tainted by the illegality. Prahin also calls our attention to *U.S. v. Miller*, 821 F.2d 546 (11th Cir. 1987), in which the court determined that the stop of the defendant's vehicle was not a legitimate traffic stop, despite the fact the right wheels of the defendant's vehicle veered over the white painted lane marker, because the officer decided to stop the vehicle and search it for drugs prior to the traffic violation, and therefore concluded that the defendant's consent to the search of his vehicle was the product of the illegal stop.

Prahin first asserts that the seizure was unlawful because Wilson lacked probable cause to seize him. This is not the case. Wilson's radar device registered Prahin's speed at 76 miles per hour in an area of the Interstate where the maximum speed limit was 65 miles per hour. That circumstance provided Wilson with probable cause to stop Prahin for speeding and detain him long enough to issue a citation for that conduct. See *State v. Roach,*

*supra* (a law enforcement officer has probable cause to arrest without a warrant when the officer has knowledge, based upon information reasonably trustworthy under the circumstances, which justifies a prudent belief that a suspect is committing or has committed a crime). Because Wilson had probable cause to detain Prahin, *Florida v. Royer, supra*, has no application here.

Prahin secondly asserts that his seizure was illegal because the initial stop of his vehicle was merely a pretext to seek his consent to search the vehicle. We have held that an arrest may not be used as a pretext to search for evidence, at least in situations where law enforcement officers make an arrest as a pretext to conduct a search incident to that arrest. *State v. Vann*, 230 Neb. 601, 432 N.W.2d 810 (1988). A pretextual arrest is one in which the arrest is only a sham or front being used as an excuse for making a search. *Id*. Wilson testified without contradiction that he did not decide to ask Prahin for consent to search the vehicle until after he had stopped Prahin's vehicle, which was after Wilson was aware of the speeding violation. Thus, the situation here differs from that in *U.S. v. Miller, supra*, cited by Prahin, in that in *Miller* the officer testified that he decided to stop the vehicle and search it for drugs prior to the traffic violation. It cannot be said that Prahin's arrest was pretextual.

As shown by the foregoing discussion, Prahin's contention that he was illegally seized at the time he consented to the search and signed the consent form is without merit.

Prahin next contends that even if we conclude that he was not illegally arrested, his consent was not voluntarily given because

> from the moment [Wilson] stopped [Prahin], [Wilson] engaged in a series of subtle but pointed actions designed to subject [Prahin] to [Wilson's] authority. . . . Trooper Wilson, who was driving a marked State Patrol car, and wearing a uniform, including a revolver, obviously knew that the custodial atmosphere was greatly heightened with [Prahin] being ordered out of his car and into [Wilson's] vehicle. Given the obvious fact that [Prahin] did nothing to threaten [Wilson], there was no legitimate reason for [Wilson] to conduct a custodial investigation.

Brief for appellant at 13-14.

The right to be free from an unreasonable search and seizure, as guaranteed by the fourth amendment to the U.S. Constitution and by article 1, § 7, of the Nebraska Constitution, may be waived by the consent of the citizen. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *State v. Juhl*, 234 Neb. 33, 449 N.W.2d 202 (1989). In order for the consent to search to be effective, however, it must be a free and unconstrained choice and not the product of a will overborne. *Schneckloth v. Bustamonte, supra*; *State v. Juhl, supra*. In other words, the consent must be given voluntarily and not as the result of duress or coercion, whether express, implied, physical, or psychological. See *State v. Juhl, supra*. The determination of whether a consent to search is voluntarily given is a question of fact to be determined from the totality of the circumstances surrounding the giving of the consent. *State v. Bowen*, 232 Neb. 725, 442 N.W.2d 209 (1989); *State v. Sutton*, 231 Neb. 30, 434 N.W.2d 689 (1989); *State v. Bonczynski*, 227 Neb. 203, 416 N.W.2d 508 (1987). See, also, *State v. Juhl, supra*. In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents. *Schneckloth v. Bustamonte, supra*. The burden is upon the government to prove that the consent to search was voluntarily given. See *State v. Sutton, supra*. Findings of fact reached by the trial court on a motion to suppress will not be overturned on appeal unless those findings are clearly erroneous. *State v. Eary, ante* p. 254, 454 N.W.2d 685 (1990); *State v. Juhl, supra*.

Prahin urges, as noted above, that because he was in custody at the time he gave his consent, the consent was not voluntary. Although the fact that an individual is in police custody is an important consideration in determining the voluntariness of the consent to search, *State v. French*, 203 Neb. 435, 279 N.W.2d 116 (1979), such factor, standing alone, does not invalidate the consent to search as long as the consent was otherwise voluntarily given. *United States v. Watson*, 423 U.S. 411, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976), *reh'g denied* 424 U.S. 979, 96 S. Ct. 1488, 47 L. Ed. 2d 750; *State v. Christianson*, 217 Neb.

445, 348 N.W.2d 895 (1984) (upholding lower court's finding that defendant's consent to search while under arrest on unrelated charges was voluntary).

The evidence supports the district court's finding that Prahin voluntarily consented to the search of the automobile. Cf. *State v. Juhl, supra*. In a straightforward manner, Wilson told Prahin what he was searching for and asked if he might search Prahin's automobile for those items. Prahin agreed and signed a consent form in which he was informed that he had the right to refuse consent. See, *State v. Packett*, 207 Neb. 202, 297 N.W.2d 762 (1980); *State v. French, supra* (although there is no requirement that a person asked to consent to a search be advised that he may refuse to consent, the subject's knowledge of a right to refuse to consent is a factor to be taken into account in determining whether the consent to search is voluntary). See, also, *State v. Horn*, 218 Neb. 524, 357 N.W.2d 437 (1984) (lower court's finding that defendant voluntarily consented to the search upheld in light of fact that record did not reflect any evidence that officers coerced, threatened, or made promises to the defendant and fact that defendant signed consent form which contained an express provision that defendant could deny permission to search). There is no evidence in the record that Wilson overtly or subtly coerced, threatened, or made promises to Prahin in order to induce him to consent to the search. The record shows, rather, that Prahin not only voluntarily consented to the search but also voluntarily participated in the search by opening the trunk to the automobile and removing the traveling bag. See, *State v. Shepardson*, 194 Neb. 673, 235 N.W.2d 218 (1975) (affirmative consent may be established by acts entirely aside from the use of words); *State v. Forney*, 182 Neb. 802, 157 N.W.2d 403 (1968), *cert. denied* 393 U.S. 1044, 89 S. Ct. 640, 21 L. Ed. 2d 593 (1969), *adopting State v. Forney*, 181 Neb. 757, 150 N.W.2d 915 (1967) (in addition to consenting to search, defendant opened his automobile trunk for officer's inspection). Moreover, there is no evidence that in order to obtain Prahin's consent, Wilson took unlawful advantage of the fact that Prahin was seated in the police vehicle. See *United States v. Jones*, 475 F.2d 723 (5th Cir. 1973), *cert. denied* 414 U.S. 841, 94 S. Ct. 96, 38 L. Ed. 2d

77 (in determining whether consent of person placed in police custody is voluntary, the question is: Did the officer use coercive tactics or take unlawful advantage of the arrest situation to obtain the consent?).

Nor did the search of his automobile exceed the scope of Prahin's consent. See *State v. Sutton, supra* (a search made pursuant to a consent may not exceed the scope of the consent). It has been held that police may open closed but unlocked containers within the place to which consent was given, especially if police have indicated that they are searching for a small object which might be concealed in such a container. 3 W. LaFave, Search and Seizure § 8.1(c) (West 1987). See, *United States v. Kapperman*, 764 F.2d 786, 794 (11th Cir. 1985), *reh'g denied* 770 F.2d 1084 (consent to search automobile and remove " 'whatever documents or items of property whatsoever, which they deem pertinent to the investigation,' " authorized police to search unlocked suitcase in automobile, "as documents or other items of property cannot necessarily be expected to be lying loose in an automobile"); *U.S. v. Anderson*, 859 F.2d 1171, 1176 (3d Cir. 1988) (where defendant consented to search of automobile for " 'any letters[,] documents, papers, materials or other property which is pertinent to the investigation,' " police were authorized to look in the trunk and open closed bags); *People v. Mirenda*, 57 N.Y.2d 261, 442 N.E.2d 49, 455 N.Y.S.2d 752 (1982) (consent to search automobile allowed search of attache case within trunk); *U.S. v. Sealey*, 830 F.2d 1028 (9th Cir. 1987) (consent to search premises extended to travel bag, as consent was to search for gun which could have been hidden there).

Finally, it is beyond dispute that Wilson's seizure of the cocaine was legal. It is well established that not everything which is uncovered in a lawful search is thereby subject to lawful seizure. See, *State v. Elkins,* 245 Or. 279, 422 P.2d 250 (1966); 2 W. LaFave, Search and Seizure § 5.2(j) (West 1987). The U.S. Supreme Court has stated that there must "be a nexus . . . between the item to be seized and criminal behavior," that is, "probable cause . . . to believe that the evidence sought will aid in a particular apprehension or conviction." *Warden v. Hayden*, 387 U.S. 294, 307, 87 S. Ct. 1642, 18 L. Ed. 2d 782

(1967).

Probable cause exists to validate the seizure of an item during a lawful search where facts and circumstances within an officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that certain items may be contraband or evidence of a particular crime. See *State v. Holman*, 221 Neb. 730, 380 N.W.2d 304 (1986). The probable cause standard does not demand a showing that such a belief is correct or more likely true than false. *Id*.

Thus, irrespective of whether it can be said that Prahin consented to the seizure of the cocaine, Wilson had probable cause to seize the cocaine because the manner of packaging the substance and the markings on the packages provided Wilson, as a trained and experienced police officer, with sufficient information to warrant a reasonable belief that the packages contained cocaine.

The district court properly overruled Prahin's motion to suppress, and, thus, his first assignment of error is without merit.

Because of a plain error relating to the sentence, we do not reach Prahin's second assignment of error, which claims the district court "abused its discretion by imposing excessive sentence of imprisonment . . . ." Brief for appellant at 14.

The district court's sentencing order correctly notes that the matter came on for sentencing on two separate charges: speeding and possessing a controlled substance for distribution. However, in the decretal portion of its order, the district court directs only that Prahin "be, and hereby is, sentenced to the Nebraska Penal and Correctional Complex for a period of not less than ten (10) years nor more than twenty (20) years . . . ." Thus, the sentencing order imposes a combined sentence for the two crimes. It is impossible for this court to review the propriety of a single sentence which has been imposed for two separate offenses. See *Kroger v. State*, 158 Neb. 73, 62 N.W.2d 312 (1954). Accordingly, the sentence imposed is vacated and set aside and the cause remanded for resentencing in accordance with law.

SENTENCE VACATED, AND CAUSE
REMANDED FOR RESENTENCING.