STATE OF NEBRASKA, APPELLANT, V. SHON M. SHURTER, APPELLEE.
468 N.W.2d 628

Filed May 3, 1991.   No. 91-141.

Stephen A. Scherr, Adams County Attorney, for appellant.

Arthur R. Langvardt for appellee.

FAHRNBRUCH, J.

The Adams County Attorney appeals a district court order suppressing testimonial and physical evidence (a sawed-off shotgun) obtained as a result of a search of Shon M. Shurter's mobile home. The order of the district court for Adams County is reversed, and the cause is remanded for further proceedings.

In addition to any other right to appeal, the State may appeal from an order granting a motion for the return of seized

property and to suppress evidence. Neb. Rev. Stat. § 29-824 (Reissue 1989). Section 29-824 further provides that such review is conducted by a single judge of the Supreme Court.

In reviewing the district court's suppression order, the following well-established principles must be applied: "In determining the correctness of a trial court's ruling on a motion to suppress, the Supreme Court will uphold the trial court's findings of fact unless those findings are clearly wrong. [Citations omitted.]" *State v. Cortis*, 237 Neb. 97, 106, 465 N.W.2d 132, 140 (1991). However, with regard to questions of law, the Supreme Court has an obligation to reach a conclusion independent of that reached by the trial court. *State ex rel. Gaddis v. Gaddis*, 237 Neb. 264, 465 N.W.2d 773 (1991).

At the suppression hearing held on November 1, 1990, Steven D. Murphy was the sole witness. Murphy is a Hastings, Nebraska, police officer and a graduate of the law enforcement training center at Grand Island. He had received continuing education in the law enforcement field.

Officer Murphy testified that while he was on duty on April 12, 1990, he went to the Hastings residence of Shurter for the purpose of investigating a reported vandalism to Shurter's pickup truck on a previous night. When Murphy arrived at Shurter's mobile home between 9 and 11 a.m., he observed the pickup truck in front of Shurter's residence. He exited his vehicle, walked up to Shurter's residence, and knocked on the door. There was no response. Murphy returned to his car and began driving away. At that point, Shurter opened the door of the mobile home and motioned Murphy to come back. When Murphy approached Shurter, he identified himself as a police officer and informed Shurter that he needed to talk to someone concerning the dollar amount of the damage to the vandalized pickup truck.

With Shurter standing in the doorway of the mobile home, holding the door partially open, and with Murphy on the steps, the two men began discussing the damage to the pickup truck. Shurter had only a blanket around his waist which he was holding with one hand. The temperature was cool, and it was drizzling.

Officer Murphy, on cross-examination, testified that after a

short conversation, he most likely asked Shurter if he could come into the mobile home. He could not state whether he definitely made that request, but he did testify that it was his normal practice to do so. On direct examination, Murphy stated that in response to his request to come inside, Shurter stepped back from the door and opened it farther, but did not say anything. The officer testified that he did not demand entry into the mobile home or threaten Shurter, that he was wearing civilian clothes, and that his firearm was not visible to Shurter. As Murphy entered the residence, Shurter was approximately 4 to 5 feet from the door.

After Murphy entered the mobile home, he noticed a BB gun replica of a semiautomatic Uzi rifle that was lying on a counter directly in front of him. While the two men continued their conversation regarding the damaged pickup truck, Murphy looked around to see if any other weapons were present. He saw a sawed-off shotgun on a coffee table in Shurter's living room approximately 12 to 15 feet from where he stood inside the doorway to the mobile home. Murphy walked to the coffee table, picked up the weapon, removed a shell, and took possession of the shotgun.

Though the record is silent on this point, Shurter was apparently charged with possession of a short shotgun, in violation of Neb. Rev. Stat. § 28-1203(1) (Reissue 1989). That crime is a Class IV felony and is punishable by a term of imprisonment of up to 5 years, a fine of up to $10,000, or both. Neb. Rev. Stat. § 28-105 (Reissue 1989). Contending that his fourth amendment rights were violated, Shurter moved to suppress "all objects seized from the residence of Defendant . . . together with all testimony as to observations made or statements made by the Defendant . . . ." The trial court sustained Shurter's suppression motion, finding that "there is no evidence the officer requested permission to enter."

## I. JURISDICTION

In making an order granting a motion to suppress and to return property, the district court shall in such order fix a time, not exceeding ten days, in which the county attorney . . . may file a notice with the clerk of such court of his

intention to seek a review of the order.

Neb. Rev. Stat. § 29-826 (Reissue 1989). In this case, the district court entered its order on January 10, 1991, but did not in that order set a time in which the State could file a notice of intent to seek review of the district court's order. The State filed its notice of intent to seek review on January 22, 1991. Shurter argues that because the county attorney's notice of intention to seek review was not filed with the clerk of the district court within 10 days of the suppression order, this court is without jurisdiction to hear the appeal.

Whatever the merits of Shurter's legal argument, he is incorrect as a factual matter. In computing the time in which the county attorney was required to file his notice of intent to seek review, the last day of the period so computed is not counted if it falls on a weekend or holiday. Neb. Rev. Stat. § 25-2221 (Reissue 1989). In this case, the 10th day fell on Sunday, January 20, 1991, which may not be computed in determining the time in which the county attorney was required to file the notice. The following day must also be excluded, since it was a state holiday commemorating the birth of Martin Luther King, Jr. Thus, the last day on which the Adams County Attorney could lodge this appeal was Tuesday, January 22, 1991. The record reflects that he did so on that date.

Shurter argues that because the county attorney failed to obtain the Attorney General's consent to file in this court an application for summary review of the suppression order as required by § 29-824, this court is without jurisdiction. Again, the merits of Shurter's argument need not be reached, as he is mistaken as a factual matter. Included in the transcript is the Attorney General's consent to the Adams County Attorney's appeal in this matter.

## II. SEIZURE

The State argues that Officer Murphy had a right to be in Shurter's mobile home because Shurter consented to his presence there and that his seizure of the short shotgun was then justified under the plain view doctrine. Both the U.S. and Nebraska Constitutions guarantee an individual the right to be free from unreasonable searches and seizures. See, U.S. Const.

amend. IV; Neb. Const. art. I, § 7. A warrantless seizure is justified under the plain view doctrine if (1) a law enforcement officer has a legal right to be in the place from which the object subject to the seizure could be plainly viewed, (2) the seized object's incriminating nature is immediately apparent, and (3) the officer has a lawful right of access to the seized object itself. *Horton v. California*, ___ U.S. ___, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990). Assuming the first two elements listed in *Horton* are met, there is no question that Officer Murphy had a lawful right of access to the sawed-off shotgun, since it was lying in the open in a place where he had a right to be. See *U.S. v. Berkowitz*, 927 F.2d 1376 (7th Cir. 1991). Accordingly, this appeal turns on whether Shurter consented to Officer Murphy's entry into his mobile home and whether the incriminating nature of the short shotgun was immediately apparent to the officer.

### 1. CONSENT

The right to be free from an unreasonable search and seizure may be waived by consent of the citizen. *State v. Prahin*, 235 Neb. 409, 455 N.W.2d 554 (1990). " 'Affirmative consent may be established by acts entirely aside from the use of words.' " *State v. Walker*, 236 Neb. 155, 159-60, 459 N.W.2d 527, 531 (1990) (quoting *State v. Romonto*, 190 Neb. 825, 212 N.W.2d 641 (1973)).

> In order for the consent to search to be effective, however, it must be a free and unconstrained choice and not the product of a will overborne. . . . In other words, the consent must be given voluntarily and not as the result of duress or coercion, whether express, implied, physical, or psychological. . . . The determination of whether a consent to search is voluntarily given is a question of fact to be determined from the totality of the circumstances surrounding the giving of the consent. . . . In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possibly vulnerable subjective state of the person who consents. . . . The burden is upon the government to prove that the

· consent to search was voluntarily given.
(Citations omitted.) *Prahin, supra* at 416, 455 N.W.2d at 559-60.

Shurter agrees that a police officer may enter a residence with the occupant's consent, either express or implied, and then the officer may seize objects in plain view. However, the defendant contends that before consent can be given, law enforcement officers must first seek permission to enter a residence.

On this question of law, the court has an obligation to reach a conclusion independent of that of the trial court. In *Walker, supra*, an off-duty police officer went to a home which he leased to check on some repairs, among other nonpolice matters. Although the officer was off-duty, the Supreme Court first analyzed the case as if the officer had been on duty. After the officer rang the doorbell several times and knocked loudly on the door, the defendant answered the door. The officer explained to the defendant that he had arranged a meeting with his tenant at the house. The defendant informed the officer that the tenant was not at home, stepped back, and held the door open, allowing the officer to enter the residence. After the officer entered the premises, he observed a balance beam scale and a controlled substance residue in plain view, which led to the defendant's arrest and conviction for possession of methamphetamine. The court determined that the defendant implicitly consented to the officer's entry into the home, where he observed the objects in plain view, and the court upheld the defendant's conviction. A number of courts, both federal and state, have found lawful consent for entry by law enforcement officers on the basis of an individual's conduct in opening a door and stepping backward, even in the absence of a request by the officers to enter. See, e.g., *United States v. Turbyfill*, 525 F.2d 57 (8th Cir. 1975); *U.S. v. Breland*, 715 F. Supp. 7 (D.D.C. 1989), *aff'd* 918 F.2d 225 (D.C. Cir. 1990); *People v. Gross*, 166 Ill. App. 3d 413, 519 N.E.2d 1043 (1988), *appeal denied* 121 Ill. 2d 576, 526 N.E.2d 835, *cert. denied* 488 U.S. 854, 109 S. Ct. 142, 102 L. Ed. 2d 115; *People v. Taylor*, 111 A.D.2d 520, 489 N.Y.S.2d 394 (1985), *appeal denied* 66 N.Y.2d 618, 485 N.E.2d 245, 494 N.Y.S.2d 1041; *Daugherty v. State*, 652 S.W.2d 569

(Tex. App. 1983). When one manifests consent by making an inviting or pointing gesture, such as waving a law enforcement officer into the premises or opening the door wider and stepping backward, it would be unwise to invalidate such a consent for the reason that the officer failed to engage in the empty formality of first seeking permission to enter.

The trial court found that based on Officer Murphy's equivocal testimony, it could not find that the officer asked Shurter if he could enter his mobile home. That finding is not clearly erroneous in view of Officer Murphy's uncertain testimony on that point. Therefore, there are two scenarios under which Officer Murphy entered the mobile home: Either Officer Murphy first stepped into the mobile home and Shurter moved aside, or Shurter opened the door farther and stepped backward. In the first instance, it cannot be said that the consent would be voluntary, but as the foregoing case law instructs, consent would be valid in the latter case.

Under the totality of the circumstances, Shurter, by his conduct, voluntarily consented to Officer Murphy's entry into the defendant's mobile home. It is uncontroverted that while Officer Murphy was driving away from Shurter's mobile home the defendant waved to Murphy to return. It is also uncontroverted that as Shurter and the officer were visiting, Shurter held open the door of his mobile home. It is further uncontroverted that before Officer Murphy entered the mobile home Shurter stepped back and opened the door wider, which permitted Murphy to enter the mobile home. By stepping back and opening the door of his home wide enough for Officer Murphy to enter the home, Shurter, by his conduct, invited Officer Murphy into his home. It is not necessary for a police officer to request entry into a residence when a defendant either verbally or by his or her conduct invites the police officer into the defendant's residence.

## 2. INCRIMINATING NATURE IMMEDIATELY APPARENT

Officer Murphy testified that he had received training in the identification of illegal weapons. He further testified that he observed a sawed-off shotgun sitting on a coffee table a short distance from where he was standing. Murphy's testimony

reflects that the incriminating nature of the contraband was immediately apparent to him. The fact that Officer Murphy, while remaining standing by the door, looked around the mobile home for illegal weapons does not invalidate the seizure of the short shotgun. The fourth amendment does not prohibit the warrantless seizure of contraband or evidence of a crime in plain view, even though the discovery of the evidence was not inadvertent. See *Horton v. California*, ____ U.S. ____, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1990). See, also, *U.S. v. Cardona-Rivera*, 904 F.2d 1149 (7th Cir. 1990).

The suppression order of the district court for Adams County is reversed. The cause is remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.