STATE OF NEBRASKA, APPELLEE, V. DONALD CLAUS, APPELLANT.
594 N.W. 2d 685

Filed May 25, 1999. No. A-98-809.

Kirk E. Naylor, Jr., for appellant.

Don Stenberg, Attorney General, and David Arterburn for appellee.

HANNON, SIEVERS, and CARLSON, Judges.

SIEVERS, Judge.

Donald Claus was charged by information in the district court for Buffalo County, Nebraska, with possession of a controlled substance, to wit, methamphetamine, a Class IV felony. This drug possession case addresses whether a suspect's general consent for an officer to search a company vehicle which the suspect has been operating includes consent to open and examine a closed container found in plain view in the vehicle.

## SUPPRESSION HEARING

Claus filed a motion to suppress the seized drugs as the product of an unreasonable and illegal search under the 4th and 14th Amendments to the U.S. Constitution.

A hearing was held on the motion to suppress on April 21, 1998. John Crisler, a roadmaster with Burlington Northern Sante Fe Railroad (BNSF), testified as a witness for the State. Crisler testified that at approximately 6:30 a.m. on October 8, 1997, he received a telephone call informing him that Claus, a foreman for the railroad, had gotten into an altercation with Simon Valderez, one of Claus' subordinates. Crisler spoke with Claus and with Valderez, who informed him that Claus had beer and drugs in a company truck at the worksite. Crisler then contacted Michael Beran, a certified law enforcement officer for the BNSF police department, to have Beran observe Claus' behavior during further questioning. Beran testified that before he met with Claus, Crisler informed him that Claus might have drugs.

Claus was located in a field just west of St. Michael, Nebraska. Crisler testified that he approached Claus and requested that Claus submit to a toxological test, which he agreed to do. Beran asked Claus if "he had had any drugs or weapons on his person, and I asked him if he . . . would permit me to search." Beran testified that Claus responded in the negative to the first inquiry and consented to a search of his person. In contrast, Claus testified that Beran did not ask for consent before searching him. Crisler's testimony is silent on this issue. Beran did not find anything on Claus' person.

According to Beran, he then asked if he could search the "company vehicle," and Claus consented. Both Crisler and Beran testified that upon arriving at the worksite, they had witnessed Claus driving the vehicle at issue. Claus testified that after searching him, Beran headed for the truck and "[o]pened the driver's side door, did a quick glance over the dash and then reached in and grabbed my personal bag," all without Claus' consent. According to Claus, employees at BNSF typically carry their personal belongings with them to the worksite and leave them in the company truck. Once again, Crisler's testimony is silent on the issue of consent.

Beran's search of the truck revealed a "small blue safety glasses bag" located on the front seat. After Claus admitted in response to Beran's question that the bag was his, Beran unzipped the bag and found marijuana, a metal "hash" pipe, a plastic straw, a razor blade, a glass pipe, and

> another plastic bag that had a rock of what I believed to be crack cocaine in it. I then asked Mr. Claus if that belonged to him, and he said, yes, it did. And I said was this crack? He said, no, it's crank which is a slang term for metha[m]phetamines.

When asked if Beran requested permission to open the safety glasses bag, he replied, "I don't recall if I did or not. I don't believe I did." Later, Beran testified, "I just asked him if I could search the truck."

All of the witnesses agree that Claus admitted to Beran that the drugs and paraphernalia belonged to him. They also agree that at no time did Claus protest the search of the vehicle or of his personal belongings. After also finding beer in a cooler in

the back of the truck, Beran advised Claus that he was under arrest. Beran testified at the hearing that he was "commissioned as a state deputy sheriff" from the "governor's office through the superintendent of the State Patrol." (See Neb. Rev. Stat. § 84-106 (Reissue 1994) for pertinent statutory authority.) Claus does not question Beran's authority to arrest him.

In overruling Claus' motion to suppress, the district court held that Claus was not under arrest nor was there probable cause for his arrest at the time the vehicle was searched, citing *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981) (law enforcement officers may search entirety of motor vehicle, including closed compartments and baggage, as search incident to lawful arrest). The court also held that Beran did not have probable cause to believe that there were drugs in the company truck, citing *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982) (warrantless search of containers within motor vehicle is allowed where there exists probable cause to believe that contraband was located in vehicle).

However, the court found, based solely upon the credibility of the witnesses and the information offered at the hearing, that "Officer Beran did in fact inquire and obtain permission to conduct a search of the vehicle." The court further found that it was a reasonable expectation of all parties that the "request included a request to look into the various unlocked but closed containers within the vehicle."

## TRIAL

Trial was held without a jury, and the State offered two exhibits, one of which was a stipulation *as to factual basis* between the State and Claus' attorney. It contains a condensed version of the facts from the suppression hearing in the format of *what the witnesses would say* if they were called to testify. Claus' attorney renewed his objection to any evidence contained within the stipulation regarding the drugs seized on October 8, 1997. He also objected to any representations within the stipulation regarding statements made by Claus referencing the seized substances. These objections were overruled. Exhibit 2 is a laboratory report containing the results of an analysis of the

substances seized performed by the Nebraska State Patrol Criminalistics Laboratory. The results revealed 7.91 grams of methamphetamine and 2.55 grams of marijuana. Claus' attorney objected to exhibit 2, which objection was also overruled. There was no live testimony at the trial.

At the conclusion of the trial, the court found Claus guilty on the charge of possession of a controlled substance, to wit, methamphetamine. Claus was sentenced to 3 years' probation, with various special conditions which are not relevant to this appeal, and a $1,000 fine. He appeals his conviction to this court.

## ASSIGNMENT OF ERROR

Claus argues that the district court erred in denying his motion to suppress the evidence of drugs and his statements concerning the same.

## STANDARD OF REVIEW

■ A trial court's ruling on a motion to suppress evidence, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999).

## ANALYSIS

■ We briefly address the State's contention that the Fourth Amendment does not extend its protections in this case because Beran was not a governmental official. Beran claims the power of arrest, and under the statute which he was operating, § 84-106, there can be little doubt that he is a "deputy state sheriff" with the power to "enforce the provisions of the criminal laws." Therefore, under such circumstances, Beran, as a railroad security officer, is constrained by the Fourth Amendment like any sheriff or police officer.

■ The right to be free from an unreasonable search and seizure, as guaranteed by the Fourth Amendment to the U.S.

Constitution and by article I, § 7, of the Nebraska Constitution, may be waived by the consent of the citizen. *State v. Prahin*, 235 Neb. 409, 455 N.W.2d 554 (1990). Despite Claus' testimony at the hearing on the motion to suppress that he did not consent to a search of his person and the BNSF vehicle, he frames the issue on appeal as "whether appellant's consent to search the vehicle included the search of closed containers that were located within the vehicle." Brief for appellant at 4. This statement of the issue recognizes that whether there was consent was resolved against Claus by the fact finder at the suppression hearing, a factfinding we would not disturb on appeal, as there is clearly competent evidence to support it.

We bear in mind that the truck was not Claus', but his employer's. Beran did not need permission to search the BNSF vehicle if Claus had no legitimate expectation of privacy with respect to the vehicle itself. *State v. Cody*, 248 Neb. 683, 539 N.W.2d 18 (1995) (subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as reasonable). But, since the trial court decided the suppression issue by determining whether there was consent and whether such consent extended to the safety glasses bag, we follow this path also. We do not decide whether a BNSF security officer needs consent to search a BNSF vehicle being used by a BNSF employee. Instead, we decide whether Claus' consent to search the BNSF vehicle, irrespective of whether it was needed, extended to closed but unlocked containers found in the vehicle.

Consent is an exception to the probable cause requirement of the Fourth Amendment. See *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). A consensual search may not exceed the scope of the consent given. *U.S. v. McKines*, 933 F.2d 1412 (8th Cir. 1991) (defendant's consent to search of his luggage included consent to search containers therein).

In *Florida v. Jimeno*, 500 U.S. 248, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991), the U.S. Supreme Court held that a criminal suspect's right to be free from unreasonable searches was not violated when, after he gave a police officer permission to search his car, the officer opened a closed container found within the car. In *Jimeno*, a police officer stopped Enio Jimeno,

whom he believed had just arranged a drug transaction, for a traffic violation. The officer told Jimeno that he had been stopped for committing a traffic infraction. The officer went on to say that he had reason to believe Jimeno was carrying narcotics in his car and asked permission to search it, although he did not have to consent. Jimeno stated that he had nothing to hide and gave the officer permission. The officer opened the passenger door and saw a folded paper bag on the floor. He picked it up, opened it, and found cocaine inside.

 Jimeno and his wife, who was also in the car, were charged with possession of cocaine with the intent to distribute. Before trial, the Jimenos moved to suppress the cocaine on the ground that Jimeno's consent to search the car did not extend to the bag. The trial court granted the motion and found that although Jimeno could have assumed that the officer would have searched the bag at the time he gave consent, his consent to search the car did not carry with it specific consent to open the bag and examine its contents. The Supreme Court reversed the suppression, holding that the standard for measuring the scope of a suspect's consent under the Fourth Amendment to the U.S. Constitution is that of objective reasonableness: What would the typical reasonable person have understood by the exchange between the officer and the suspect? The Supreme Court framed the issue as "whether it is reasonable for an officer to consider a suspect's general consent to a search of his car to include consent to examine a paper bag lying on the floor of the car" and concluded that it was. 500 U.S. at 251.

The majority in *Jimeno* based its approval of the officer's search on the principle established in *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982), that a warrantless search of an automobile based on probable cause extends to closed containers that may conceal the object of the search. The *Jimeno* court, citing *Ross*, held that the scope of a search is generally defined by its expressed object. Jimeno, like Claus in the instant case, granted the officer permission to search his car and did not place any explicit limitation on the scope of the search. The officer in *Jimeno* informed Jimeno that the officer believed Jimeno was carrying narcotics and that the search would involve looking for narcotics in the car.

The evidence in the instant case reveals that Beran first asked Claus if he "had any drugs or weapons on his person" and then proceeded to search him. Beran then asked Claus if he could search the "company vehicle." Although Beran did not expressly state such, we believe that any reasonable person would understand that Beran's request to search the vehicle, just like his request to search Claus' person, was aimed at discovering drugs and weapons, given Beran's clear disclosure of his interest in drugs and weapons.

In *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991), the Court held:

> We think that it was objectively reasonable for the police to conclude that the general consent to search respondents' car included consent to search containers within that car which might bear drugs. A reasonable person may be expected to know that narcotics are generally carried in some form of a container. "Contraband goods rarely are strewn across the trunk or floor of a car." . . . The authorization to search in this case, therefore, extended beyond the surfaces of the car's interior to the paper bag lying on the car's floor.

Even though Beran did not expressly tell Claus that the purpose of the vehicle search was to find drugs and weapons, the result would not change. As stated in *U.S. v. Snow*, 44 F.3d 133, 135 (2d Cir. 1995), when the purpose is not particularized it will be "self-evident" that the officer is "looking for evidence of illegal activity" and "just as obvious that such evidence might be hidden in closed containers." This result follows when, as in the instant case and in *Snow*, the officer's request is to "search." See 3 Wayne R. LaFave, Search and Seizure, a Treatise on the Fourth Amendment § 8.1(c) (3d ed. 1996). Beran's expressed interest in drugs on Claus' person makes the object of the vehicle search obvious. Compare, *U.S. v. Infante-Ruiz*, 13 F.3d 498, 505 (1st Cir. 1994) (where driver consented to search of car, including trunk, consent did not cover passenger's unlocked briefcase in trunk, as driver's "identification of the briefcase as belonging to another nearby passenger suggested precisely the contrary"); *U.S. v. Garcia*, 897 F.2d 1413, 1419-20 (7th Cir. 1990) (consent in response to police request to look inside truck

for "drugs or weapons in the truck" did not justify "inherently invasive" police removal of door panels).

Whether one who consents later objects to an ongoing search is a significant inquiry determining whether there is a limitation placed on the scope of the consent that has been granted. *U.S. v. McBean*, 697 F. Supp. 495 (S.D. Ga. 1987), citing *United States v. Kapperman*, 764 F.2d 786 (11th Cir. 1985). In *United States v. Sierra-Hernandez*, 581 F.2d 760, 764 (9th Cir. 1978), the officer received permission from the defendant when he asked to " 'look inside the truck.' " The officer looked in the back cargo portion but then continued his search through the cab and, ultimately, under the hood where he found marijuana. The circuit court, in affirming the district court's decision, held that under the circumstances, the defendant's failure to express concern or objection when the officer proceeded to the hood indicated that the search was within the initial scope of the consent. *Id.* Here, during the search of the vehicle, and the opening of the safety glasses bag, Claus did not object to or protest the scope of the search.

In *State v. Prahin*, 235 Neb. 409, 455 N.W.2d 554 (1990), the court determined that a vehicle search concerning luggage did not exceed the scope of the defendant's consent. The Nebraska Supreme Court stated:

> It has been held that police may open closed but unlocked containers within the place to which consent was given, especially if police have indicated that they are searching for a small object which might be concealed in such a container. 3 W. LaFave, Search and Seizure § 8.1(c) (West 1987). See, *United States v. Kapperman*, 764 F.2d 786, 794 (11th Cir. 1985), *reh'g denied* 770 F.2d 1084 (consent to search automobile and remove " 'whatever documents or items of property whatsoever, which they deem pertinent to the investigation,' " authorized police to search unlocked suitcase in automobile, " 'as documents or other items of property cannot necessarily be expected to be lying loose in an automobile' "); *U.S. v. Anderson*, 859 F.2d 1171, 1176 (3d Cir. 1988) (where defendant consented to search of automobile for " 'any letters[,] documents, papers, materials or other property which is perti-

nent to the investigation,'" police were authorized to look in the trunk and open closed bags); *People v. Mirenda*, 57 N.Y.2d 261, 442 N.E.2d 49, 455 N.Y.S.2d 752 (1982) (consent to search automobile allowed search of attache case within trunk); *U.S. v. Sealey*, 830 F.2d 1028 (9th Cir. 1987) (consent to search premises extended to travel bag, as consent was to search for gun which could have been hidden there).

*Prahin*, 235 Neb. at 418, 455 N.W.2d at 560-61.

## CONCLUSION

We affirm the decision of the district court overruling the motion to suppress and agree with its finding that it was a reasonable expectation that Beran's request to search the company vehicle included looking into closed but unlocked containers within the vehicle. We find, based on the exchange between Beran and Claus, that a reasonable person would have understood that his consent included examination of closed containers, where drugs would normally be hidden. Thus, Claus' authorization to search the company vehicle extended beyond the surfaces of the car's interior to the safety glasses bag lying on the front seat which contained the illegal drugs which he admitted owning.

AFFIRMED.