Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/20/2023 08:07 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
SHEENA HAMMOND, APPELLANT.
___ N.W.2d ___

Filed October 20, 2023.    No. S-22-867.

1. **Convictions: Appeal and Error.** In an appeal of a criminal conviction, an appellate court reviews the evidence in a light most favorable to the prosecution.

2. **Motions to Suppress: Trial: Pretrial Procedure: Appeal and Error.** When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from the trial and from the hearings on the motion to suppress.

3. **Constitutional Law: Search and Seizure: Motions to Suppress: Appeal and Error.** In reviewing a trial court's ruling on a motion to suppress evidence based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. And where the facts are largely undisputed, the ultimate question is an issue of law.

4. **Constitutional Law: Search and Seizure: Appeal and Error.** An appellate court applies a two-part analysis when reviewing whether a consent to search was voluntary. As to the historical facts or circumstances leading up to a consent to search, the appellate court reviews the trial court's findings for clear error. However, whether those facts or circumstances constituted a voluntary consent to search, satisfying the Fourth Amendment, is a question of law, which the appellate court reviews independently of the trial court. And where the facts are largely undisputed, the ultimate question is an issue of law.

5. **Constitutional Law: Search and Seizure: Warrantless Searches.** Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable

searches and seizures. Searches without a valid warrant are per se unreasonable, subject only to a few specifically established and well-delineated exceptions.

6. **Warrantless Searches.** The warrantless search exceptions Nebraska has recognized include: (1) searches undertaken with consent, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest.

7. **Warrantless Searches: Proof.** It is the State's burden to show that a search falls within an exception to the warrant requirement.

8. **Constitutional Law: Search and Seizure: Duress.** Generally, to be effective under the Fourth Amendment, consent to a search must be a free and unconstrained choice, and not the product of a will overborne.

9. **Warrantless Searches: Duress.** Consent must be given voluntarily and not as a result of duress or coercion, whether express, implied, physical, or psychological.

10. **Constitutional Law: Search and Seizure.** The determination of whether the facts and circumstances constitute a voluntary consent to a search, satisfying the Fourth Amendment, is a question of law.

11. **Search and Seizure.** Whether consent to a search was voluntary is to be determined from the totality of the circumstances surrounding the giving of consent.

12. **Search and Seizure: Police Officers and Sheriffs.** Recitation of magic words is unnecessary to give consent to a search. The key inquiry focuses on what the typical reasonable person would have understood by the exchange between the officer and the suspect.

13. **Search and Seizure.** Consent to search may be implied by action rather than words.

14. **Police Officers and Sheriffs: Warrantless Searches.** While there is no requirement that police must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search, knowledge of the right to refuse is a factor to be considered in the voluntariness analysis.

15. **Appeal and Error.** When an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.

16. ____. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

17. **Warrantless Searches: Probable Cause.** Probable cause, standing alone, is not an exception that justifies the search of a person without a warrant.

18. **Criminal Law: Police Officers and Sheriffs: Arrests: Probable Cause.** Under Nebraska law, a person may be arrested without a warrant when an officer has probable cause to believe the person either has committed a felony or has committed a misdemeanor in the officer's presence.

19. **Search and Seizure: Probable Cause: Appeal and Error.** An appellate court determines whether probable cause existed under an objective standard of reasonableness, given the known facts and circumstances, but appellate courts should avoid an excessively technical dissection of the factors supporting probable cause.

20. **Probable Cause: Words and Phrases.** The concept of probable cause, as the name implies, is based on probabilities. It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.

21. **Probable Cause: Police Officers and Sheriffs.** To find probable cause, officers are not required to rule out all innocent explanations for suspicious facts.

22. ____: ____. Probable cause may be based on commonsense conclusions about human behavior, and due weight should be given to inferences by law enforcement officers based on their experience and specialized training.

Appeal from the District Court for Gage County: Ricky A. Schreiner, Judge. Affirmed.

Lee Timan, of Nelson, Clark & Timan, P.C., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ., and Pirtle, Chief Judge.

Cassel, J.

## I. INTRODUCTION

Sheena Hammond appeals her convictions for possession of methamphetamine and drug paraphernalia following a stipulated bench trial. Hammond's primary contention is that the district court erred when it overruled her motion to suppress. The court rejected her Fourth Amendment arguments, concluding that (1) Hammond consented to a search of her

vehicle, wherein certain illegal items were found, and (2) a subsequent search of her person occurred incident to a valid arrest. The critical issue is whether Hammond's words and actions manifested consent. Because we conclude that they did, we affirm.

## II. BACKGROUND

### 1. Police-Citizen Encounter

We begin by describing Hammond's encounter with police officers. In doing so, we generally recite the historical facts set forth in the district court's order overruling Hammond's motion to suppress. We supplement the court's findings, as necessary, with the parties' stipulated facts that the district court received as evidence at trial.

On September 5, 2021, Ethan Jordan, a police officer with the Beatrice Police Department, and Brian Najera, an officer in training, made initial contact with Hammond in response to a call complaining about a possible intoxicated driver. The reporting party stated that an individual was inside an automotive parts store in Beatrice, Nebraska, "'barely able to stand up straight'" and "'about to fall over,'" and the reporting party was concerned about the possibility of her causing an accident should she drive away.

Upon arriving at the automotive parts store, Jordan "contacted" Hammond as she was standing by her vehicle in the parking lot, while an employee of the store appeared to be examining the inside of her vehicle through the open driver's-side door. Jordan testified that when he "contacte[d]" her, Hammond was "very talkative, was making kind of quick movements and appeared unable to stand still." Jordan concluded, based on his training in interdiction and "Advanced Roadside Impairment & Drug Enforcement" training, that Hammond "might be under the influence of a CNS stimulant."

During Jordan's conversation with Hammond about why he was there and what he was doing, Hammond "denied being under the influence of drugs or alcohol or driving erratically." Jordan asked Hammond if she would perform some

field sobriety maneuvers, and "video of this encounter [from Jordan's body camera] (Exhibit 2) indicate[d] she was fidgety and talkative but cooperative and pleasant and did not object to doing the requested maneuvers." Hammond "was not handcuffed or restrained in any manner during this time." She was able to lean into the open door of her vehicle and maintained possession of her vehicle's keys until she placed them on the hood of her vehicle after being asked to do so by Jordan.

During the horizontal gaze nystagmus portion of the field sobriety maneuvers, Jordan noted that "nystagmus was not present, but that [Hammond's] eyes were unable to converge and she was swaying." Jordan determined, based on his training and experience, that Hammond "did not appear to be under the influence of alcohol, however, she did show signs consistent of being under the influence of a CNS stimulant (like methamphetamine)." Jordan asked Hammond when she last "used" and if she had any illegal items in her vehicle, to which Hammond responded that she did not. He then asked if Hammond would mind if "'we look,'" and she responded, "'If you absolutely need to . . . .'" Jordan again asked to "'take a look'" in Hammond's vehicle, to which she responded, "'If you really need to go look, more power to you.'"

While the officers prepared to search Hammond's vehicle, she asked if they would hand her cigarettes to her, and Jordan responded, "'Absolutely.'" She then "stood by the vehicle and made a call on her cell phone," during which she asked someone to come to the automotive parts store "'right now.'"

The officers then conducted a thorough search of Hammond's vehicle, during which Najera located a "folded up" receipt "stuffed in the steering wheel cover that contained a white crystalline substance that he recognized through training and experience as possible methamphetamine." The receipt was from a gas station where Hammond had previously told the officers that she worked. Relying on Jordan's testimony and exhibit 2 (the video recording from Jordan's body camera), the court found that "at no time prior to . . .

Najera finding the receipt in the steering wheel cover did . . . Hammond ever ask them to stop searching."

Immediately after Najera discovered "the possible methamphetamine," Jordan took Hammond into custody, placed her in handcuffs, and conducted a search of her person. Jordan located "additional items of alleged illegal contraband during that search," including a syringe and a "micro baggie" containing a white crystalline substance. A crime laboratory report later identified both white crystalline substances seized in the encounter as methamphetamine.

## 2. Charges

The State filed an information charging Hammond with possession of methamphetamine and possession of drug paraphernalia. Hammond pled not guilty to both charges.

## 3. Motion to Suppress

Prior to trial, Hammond filed a motion to suppress all of the evidence obtained during the encounter. In the motion, Hammond asserted that she did not voluntarily consent to the initial search of her vehicle and that therefore, her arrest and the subsequent search of her person were fruit of the poisonous tree. She further asserted that the officers did not have probable cause to arrest her, because "[a]t the time [she] was detained, law enforcement did not yet have confirmation that the item found in her vehicle was in fact a controlled substance." Hammond claimed that but for the "illegal arrest" and the resulting search of her person, the officers would not have discovered additional evidence.

The district court held a hearing on the motion to suppress, during which it received evidence, including an audio recording of the call for service; video recordings from the officers' body cameras, including exhibit 2, discussed above; and the testimony of both officers.

Following the hearing, the district court entered an order overruling Hammond's motion for failure to allege a Fourth Amendment violation. In overruling the motion, the court

made specific factual findings we have already summarized. Considering the totality of the circumstances, it concluded that (1) the search of Hammond's vehicle was based upon her "voluntary consent" and (2) the search of Hammond's person occurred incident to a valid arrest.

## 4. Bench Trial and Convictions

The case proceeded to a bench trial on stipulated facts, where Hammond preserved her objections raised in the motion to suppress. The court received as evidence the exhibits previously presented at the hearing on the motion to suppress and other exhibits, including photographs of the items seized during the September 5, 2021, encounter; a crime laboratory report; and a document setting forth the parties' stipulated facts. Neither party presented argument at trial.

Following trial, the court found Hammond guilty of both crimes charged. It sentenced her to 36 months' probation for the possession of methamphetamine conviction and to a $100 fine for the possession of drug paraphernalia conviction.

Hammond filed a timely appeal, which we moved to our docket.[1]

## III. ASSIGNMENTS OF ERROR

Hammond assigns, restated, that the district court erred in (1) overruling her motion to suppress the evidence seized in the September 5, 2021, encounter; (2) overruling her renewed objections to that evidence at trial; and (3) finding the evidence was sufficient to support her convictions.

## IV. STANDARD OF REVIEW

[1] In an appeal of a criminal conviction, an appellate court reviews the evidence in a light most favorable to the prosecution.[2]

[2] When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

[2] *State v. Dailey*, 314 Neb. 325, 990 N.W.2d 523 (2023).

considers all the evidence, both from the trial and from the hearings on the motion to suppress.[3]

[3] In reviewing a trial court's ruling on a motion to suppress evidence based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. And where the facts are largely undisputed, the ultimate question is an issue of law.[4]

[4] A nearly identical standard of review applies to consensual search cases. Because of the confusion we discuss below, we set forth the entire correct standard. An appellate court applies a two-part analysis when reviewing whether a consent to search was voluntary. As to the historical facts or circumstances leading up to a consent to search, the appellate court reviews the trial court's findings for clear error. However, whether those facts or circumstances constituted a voluntary consent to search, satisfying the Fourth Amendment, is a question of law, which the appellate court reviews independently of the trial court. And where the facts are largely undisputed, the ultimate question is an issue of law.[5]

We shifted to this articulation in 2009,[6] and we believe that it is the better-reasoned approach. As one legal scholar, relying on a decision of another state's high court, has observed:

> Underlying this position is the notion that "the concept of 'voluntariness' reflects a balance between the need for effective law enforcement and society's belief that the coercive powers of law enforcement must not be unfairly exercised," and that declaring "whether certain police

---

[3] *State v. Shiffermiller*, 302 Neb. 245, 922 N.W.2d 763 (2019).

[4] *State v. Garcia, ante* p. 74, 994 N.W.2d 610 (2023).

[5] *State v. Saitta*, 306 Neb. 499, 945 N.W.2d 888 (2020).

[6] See *State v. Hedgcock*, 277 Neb. 805, 765 N.W.2d 469 (2009).

conduct is or is not unfairly coercive sets the norms that fix the limits of acceptable police behavior," norms that "should have jurisdiction-wide application."[7]

But when we shifted the standard of review, we did so without expressly repudiating old standards set forth in our prior opinions,[8] which had required reviewing the voluntariness of consent as a question of fact. Occasionally, these standards have crept into lower court opinions that relied on our earlier cases.[9] To eliminate any confusion, we now disapprove those

---

[7] 6 Wayne R. LaFave, Search and Seizure, A Treatise on the Fourth Amendment § 11.7(c) at 585 (6th ed. 2020) (quoting *State v. Thurman*, 846 P.2d 1256 (Utah 1993)).

[8] See, *State v. Mata*, 266 Neb. 668, 668 N.W.2d 448 (2003), *abrogated on other grounds, State v. Rogers*, 277 Neb. 37, 760 N.W.2d 35 (2009); *State v. Tucker*, 262 Neb. 940, 636 N.W.2d 853 (2001); *State v. Chitty*, 253 Neb. 753, 571 N.W.2d 794 (1998); *State v. Aguirre-Rojas*, 253 Neb. 477, 571 N.W.2d 70 (1997); *State v. Ready*, 252 Neb. 816, 565 N.W.2d 728 (1997); *State v. Graham*, 241 Neb. 995, 492 N.W.2d 845 (1992); *State v. Shurter*, 238 Neb. 54, 468 N.W.2d 628 (1991); *State v. Prahin*, 235 Neb. 409, 455 N.W.2d 554 (1990); *State v. Bowen*, 232 Neb. 725, 442 N.W.2d 209 (1989); *State v. Bonczynski*, 227 Neb. 203, 416 N.W.2d 508 (1987); *State v. Peery*, 223 Neb. 556, 391 N.W.2d 566 (1986); *State v. Ferrell*, 218 Neb. 463, 356 N.W.2d 868 (1984); *State v. Christianson*, 217 Neb. 445, 348 N.W.2d 895 (1984); *State v. Garcia*, 216 Neb. 769, 345 N.W.2d 826 (1984); *State v. Billups*, 209 Neb. 737, 311 N.W.2d 512 (1981); *State v. Ohler*, 208 Neb. 742, 305 N.W.2d 637 (1981); *State v. Morgan*, 206 Neb. 818, 295 N.W.2d 285 (1980); *State v. French*, 203 Neb. 435, 279 N.W.2d 116 (1979); *State v. Rathbun*, 195 Neb. 485, 239 N.W.2d 253 (1976); *State v. Van Ackeren*, 194 Neb. 650, 235 N.W.2d 210 (1975); *State v. Skonberg*, 194 Neb. 550, 233 N.W.2d 919 (1975); *State v. Holloway*, 187 Neb. 1, 187 N.W.2d 85 (1971). See, also, *In re Interest of Clinton G.*, 12 Neb. App. 178, 669 N.W.2d 467 (2003); *In re Interest of Frederick C.*, 8 Neb. App. 343, 594 N.W.2d 294 (1999); *State v. Tierney*, 7 Neb. App. 469, 584 N.W.2d 461 (1998); *State v. Butzke*, 7 Neb. App. 360, 584 N.W.2d 449 (1998).

[9] See, *State v. Howell*, 26 Neb. App. 842, 924 N.W.2d 349 (2019); *State v. Zuniga*, 25 Neb. App. 706, 911 N.W.2d 869 (2018); *State v. Bond*, 23 Neb. App. 916, 877 N.W.2d 254 (2016); *State v. Turner*, 23 Neb. App. 897, 880 N.W.2d 403 (2016).

prior opinions and the lower court opinions relying on them to the extent that they set forth a different standard of review.

## V. ANALYSIS

### 1. Motion to Suppress

In her first assignment of error, Hammond claims that the district court erred when it overruled her motion to suppress the evidence obtained during the September 5, 2021, encounter. She primarily challenges two aspects of this encounter: the initial search of her vehicle and the subsequent search of her person, following her arrest. It is undisputed that the officers conducted both searches without a warrant. The State maintains that the searches were reasonable, asserting that certain warrantless search exceptions applied.

Before addressing the parties' specific arguments, we begin by setting forth general legal principles. Then, we review the district court's findings of fact for clear error. Finally, we discuss the application of certain warrantless search exceptions to these facts.

### (a) General Legal Principles

[5,6] Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures. Searches without a valid warrant are per se unreasonable, subject only to a few specifically established and well-delineated exceptions.[10] The warrantless search exceptions Nebraska has recognized include: (1) searches undertaken with consent, (2) searches under exigent circumstances, (3) inventory searches, (4) searches of evidence in plain view, and (5) searches incident to a valid arrest.[11]

[7] It is the State's burden to show that a search falls within an exception to the warrant requirement.[12] Here, the State

---

[10] *State v. Miller*, 312 Neb. 17, 978 N.W.2d 19 (2022).

[11] *Id.*

[12] *Id.*

relies on two exceptions to justify the reasonableness of the searches, arguing that (1) the consent exception permitted the initial search of Hammond's vehicle and (2) the search incident to a valid arrest exception justified the subsequent search of Hammond's person. We will discuss these exceptions in more detail below.

### (b) Historical Facts

At this point, our standard of review would require that we review the district court's findings of fact for clear error.[13] However, Hammond conceded at oral argument that she does not challenge the court's findings of historical fact, and we agree that they are supported by the record and not clearly erroneous. Therefore, we turn to the ultimate question: whether these facts established compliance with Fourth Amendment protections as a matter of law.

### (c) Resolving Alleged Fourth Amendment Violations

Based on the historical facts, the district court reached a conclusion of law that there was no Fourth Amendment violation for two reasons. It concluded that (1) the search of Hammond's vehicle was undertaken with consent and (2) the search of her person occurred incident to a valid arrest. We address the application of these exceptions to the facts and reach an independent conclusion.[14]

### (i) Consent Exception

[8-11] We first address the State's consent argument. Generally, to be effective under the Fourth Amendment, consent to a search must be a free and unconstrained choice, and not the product of a will overborne.[15] Consent must be given voluntarily and not as a result of duress or coercion, whether

---

[13] See *State v. Garcia, supra* note 4.

[14] See *id.*

[15] *State v. Saitta, supra* note 5.

express, implied, physical, or psychological.[16] The determination of whether the facts and circumstances constitute a voluntary consent to a search, satisfying the Fourth Amendment, is a question of law.[17] Whether consent to a search was voluntary is to be determined from the totality of the circumstances surrounding the giving of consent.[18]

On appeal, Hammond contends that her purported consent was invalid for two primary reasons. She argues that there was "implied coercion" and that her statement in response to Jordan's request to look in her vehicle was "ambiguous."[19] We are not persuaded.

Hammond's sole authority on this issue is our prior decision in *State v. Tucker*.[20] In that case, she points out, we said that "[m]ere submission to authority is insufficient to establish consent to a search."[21] However, she points to nothing in the record to show mere submission in this case.

Here, Jordan asked whether Hammond would mind if "'we look'" in her vehicle, and she responded, "'If you absolutely need to . . . .'" He then asked a second time to "'take a look,'" to which Hammond responded, "'If you really need to go look, more power to you.'" The record shows that while the officers prepared to search her vehicle, Hammond asked if they would retrieve her cigarettes from the vehicle, and Jordan responded, "'Absolutely.'" Hammond then "stood by the vehicle and made a call on her cell phone."

These facts show that Jordan did not use coercion when he asked to look in the vehicle. We agree with the State that the video of the encounter did not show any threatening gestures or a threatening tone of voice. Rather, the conversation

---

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] Brief for appellant at 7.

[20] *State v. Tucker, supra* note 8.

[21] Brief for appellant at 7.

between Jordan and Hammond was casual and cordial throughout the encounter. Moreover, Jordan gave Hammond the opportunity to refuse consent, but she allowed the search to proceed without hesitation or protest. On these facts, we conclude that Hammond's will was not overborne and that she did not merely acquiesce to coercion. We therefore reject her implied coercion argument.

[12,13] We now turn to Hammond's argument that her response was ambiguous. This argument seems to overlook our statement in *Tucker* that recitation of magic words is unnecessary to give consent to a search. The key inquiry focuses on what the typical reasonable person would have understood by the exchange between the officer and the suspect.[22] And, as the State correctly points out, our subsequent cases have stated that consent to search may be implied by action rather than words.[23]

Based upon the district court's findings of fact and our review of the record, we reach an independent legal conclusion that the search of Hammond's vehicle was undertaken with consent. As noted above, the officers' body cameras recorded the encounter, and the district court received the recordings as evidence. The body camera video shows that,

---

[22] *State v. Tucker, supra* note 8.

[23] *State v. Saitta, supra* note 5, 306 Neb. at 514, 945 N.W.2d at 901 (holding that search of defendant's glove was undertaken with consent when police officer "'simply asked'" for glove, and defendant "'gave'" it to him); *State v. Modlin*, 291 Neb. 660, 867 N.W.2d 609 (2015) (noting that defendant allowed phlebotomist to draw his blood without doing anything to manifest refusal). See, also, *State v. Tucker, supra* note 8 (noting that after request to search his home, defendant responded by stepping back and gesturing with his arms raised and his hands outward and upward); *State v. Juhl*, 234 Neb. 33, 42, 449 N.W.2d 202, 209 (1989) (holding that defendant's right to be free from unreasonable search and seizure was not violated when, in response to question from police officer as to what he had in his jacket's pocket, defendant raised his right arm and responded, "'[C]heck'"), *disapproved on other grounds, State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991).

in addition to her statement, Hammond made a hand gesture toward her vehicle. She then stood nearby and had a conversation on her cell phone, without doing anything to manifest her refusal, as the officers conducted a thorough search of her vehicle. Consent may be implied from such actions. We therefore reject her ambiguity argument and conclude that the search of her vehicle was undertaken with consent.

For completeness, we briefly address two other matters. Part of Hammond's consent argument seems to suggest that Jordan had a duty to expressly inform her of her right to refuse consent. We disagree.

[14] While there is no requirement that police must always inform citizens of their right to refuse when seeking permission to conduct a warrantless consent search, knowledge of the right to refuse is a factor to be considered in the voluntariness analysis.[24] Here, to the extent that Hammond perhaps relies upon this principle, she fails to point to anything in our record to show that she did not have knowledge of the right to refuse consent.

Additionally, Hammond asserted, for the first time at oral argument, that her interaction with Jordan leading up to the search of her vehicle constituted a "second-tier" encounter. Based on the principles underlying such an argument, she seemed to suggest that the encounter constituted a seizure under the Fourth Amendment.[25] There are at least two problems with this argument.

[15,16] Generally, when an issue is raised for the first time in an appellate court, it will be disregarded inasmuch as a

---

[24] *State v. Degarmo*, 305 Neb. 680, 942 N.W.2d 217 (2020) (citing *United States v. Drayton*, 536 U.S. 194, 122 S. Ct. 2105, 153 L. Ed. 2d 242 (2002)).

[25] See *State v. Drake*, 311 Neb. 219, 229, 971 N.W.2d 759, 770 (2022) ("'[t]he second tier, the investigatory stop . . . is limited to brief, nonintrusive detention during a frisk for weapons or preliminary questioning'" and "'is considered a seizure sufficient to invoke Fourth Amendment safeguards'").

lower court cannot commit error in resolving an issue never presented and submitted to it for disposition.[26] Further, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[27] Because Hammond did not raise this argument in her motion to suppress or her appellate brief, we do not address it.

### (ii) Search Incident to
### Valid Arrest Exception

We next address the State's search incident to a valid arrest argument. The State contends that this exception applied to the search of Hammond's person, because, it asserts, probable cause existed to arrest her for possession of a controlled substance. We agree.

[17-19] Probable cause, standing alone, is not an exception that justifies the search of a person without a warrant.[28] However, under Nebraska law, a person may be arrested without a warrant when an officer has probable cause to believe the person either has committed a felony or has committed a misdemeanor in the officer's presence.[29] An appellate court determines whether probable cause existed under an objective standard of reasonableness, given the known facts and circumstances, but appellate courts should avoid an excessively technical dissection of the factors supporting probable cause.[30]

On appeal, Hammond maintains that the officers did not have probable cause to arrest her for the crime of possessing a controlled substance, after discovering the white crystalline

---

[26] *State v. Johnson*, 314 Neb. 20, 988 N.W.2d 159 (2023).

[27] *State v. Fernandez*, 313 Neb. 745, 986 N.W.2d 53 (2023).

[28] *State v. Saitta, supra* note 5.

[29] *State v. Perry*, 292 Neb. 708, 874 N.W.2d 36 (2016).

[30] *State v. Seckinger*, 301 Neb. 963, 920 N.W.2d 842 (2018).

substance in her vehicle, and that the subsequent search of her person was unlawful. She asserts that Jordan did not testify as to any specifics that led him to believe this white crystalline substance was a controlled substance and that "Jordan did not conduct a field test for this substance until he returned to the police station, *after* he had already arrested [Hammond], searched her person, and taken her to jail."[31]

[20-22] But the concept of probable cause, as the name implies, is based on probabilities. It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.[32] In other words, to find probable cause, officers are not required to rule out all innocent explanations for suspicious facts.[33] Probable cause may be based on commonsense conclusions about human behavior, and due weight should be given to inferences by law enforcement officers based on their experience and specialized training.[34]

Here, the known facts and circumstances show that it was reasonable for the officers to believe that probable cause existed to arrest Hammond. Two historical facts are particularly relevant. First, based on his specialized training and experience, Jordan determined from the field sobriety maneuvers that Hammond "did not appear to be under the influence of alcohol, however, she did show signs consistent of being under the influence of a CNS stimulant (like methamphetamine)." Second, during the search of Hammond's vehicle, Najera located a "folded up" receipt "stuffed in the steering wheel cover that contained a white crystalline substance that he recognized through training and experience as possible methamphetamine." As noted above, these facts are not in dispute.

---

[31] Brief for appellant at 9.

[32] *State v. Seckinger, supra* note 30.

[33] *Id.*

[34] *State v. McGovern*, 311 Neb. 705, 974 N.W.2d 595 (2022), *cert. denied* ___ U.S. ___, 143 S. Ct. 404, 214 L. Ed. 2d 201.

Based on the totality of the circumstances, these facts establish probable cause to believe that Hammond had committed a felony—specifically, possession of methamphetamine—in the officers' presence. We therefore conclude that probable cause existed to arrest her and that the subsequent search of her person occurred incident to a valid arrest. This argument lacks merit.

## 2. Remaining Assignments of Error

Hammond derivatively assigns that the district court erred in overruling her renewed objections to the evidence presented at trial and that the evidence was insufficient to support her convictions. She appears to concede that these assignments are premised on her motion to suppress assignment.

Because Hammond's premise fails, so do these claims. We have already determined that the court did not err in overruling the motion to suppress. It follows that it did not err in overruling Hammond's renewed objections, which were premised on her arguments in the motion to suppress. And because the court did not err in admitting the evidence, we cannot say that the evidence—which included methamphetamine and drug paraphernalia—was insufficient to support her convictions for possession of those items.

## VI. CONCLUSION

Because the search of Hammond's vehicle was undertaken with consent, and because the subsequent search of her person occurred incident to a valid arrest, we conclude that the district court did not err when it overruled Hammond's motion to suppress the evidence obtained as a result of those searches. For that reason, Hammond's remaining arguments, which are premised on her motion to suppress, also fail. Accordingly, we affirm the judgment below.

Affirmed.

Freudenberg, J., not participating.