IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. MENDOZA


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

ANDREW T. MENDOZA, APPELLANT.


Filed March 4, 2025.    No. A-24-424.


Appeal from the District Court for Kimball County: DEREK C. WEIMER, Judge. Affirmed.

Robert S. Harvoy for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.


MOORE, PIRTLE, and WELCH, Judges.

PIRTLE, Judge.


INTRODUCTION

Andrew T. Mendoza appeals from his convictions in the district court for Kimball County. His sole assignment of error is that the court erred in denying his motion to suppress evidence. For the following reasons, we affirm.

BACKGROUND

On November 2, 2021, Mendoza was sitting in the passenger seat of a vehicle when Sergeant Jamey Balthazor of the Nebraska State Patrol pulled the vehicle over for speeding. The driver was Mendoza's then-girlfriend, Myra Williams. After Balthazor activated his emergency lights, Williams continued to drive for approximately another half mile or 20 to 30 seconds. Balthazor noted this was unusual as most people pull over immediately. When retrieving Williams' information, he noticed her hand was shaking as she handed him her identification. He also learned

that the vehicle was a rental from California. During this interaction, he also picked up a very faint smell of marijuana coming from the vehicle and a stronger pleasant odor that he thought might have been used to cover the marijuana smell. Because Balthazor did not believe that the faint smell of marijuana was enough to justify a search of the vehicle, he requested the presence of a K-9 unit.

After his initial discussion with Williams, Balthazor took her to his patrol car and asked about their trip. Williams told him that she and Mendoza were traveling from California to Kansas City. She stated that they were taking turns driving so they could drive straight through. When asked, she did not know how long they were going to be in Kansas City or what they were doing once they got there. Balthazor then left Williams in the patrol car and went to talk with Mendoza. As he reapproached the vehicle, he detected another faint smell of marijuana. When he asked Mendoza for his identification, he noted that his hand was also shaking when he handed it to him. Balthazor then asked Mendoza about their travel plans. Mendoza's account mostly aligned with Williams', but he stated they had stopped at a Pilot gas station the previous night.

Balthazor returned to his patrol car, wrote Williams a warning for speeding, and asked her about two suitcases he saw in their vehicle. Williams said that she owned one of the suitcases and gave him permission to search it. However, she stated that the vehicle was Mendoza's so he would have to ask him for consent first. Balthazor asked Mendoza for consent to search the vehicle and he refused. Balthazor then told Mendoza that he was being detained so they could wait for a drug dog.

The K-9 unit arrived approximately 5 to 10 minutes later. After the drug dog alerted to the presence of something in the vehicle, Balthazor told Mendoza that he was going to search it and asked if he was going to find anything. At that point, Mendoza admitted there were mushrooms, a weed pipe, and a firearm in the vehicle. After a search of the vehicle, Balthazor found approximately 35 pounds of marijuana and mushrooms in the suitcases and a small baggie of mushrooms and a .40 caliber firearm in the center console.

On November 3, 2021, a complaint was filed against Mendoza charging him with two counts of possession with intent to distribute a controlled substance while possessing a firearm, a Class II felony; one count of failing to affix a drug tax stamp, a Class IV felony; and one count of carrying a concealed weapon, a Class I misdemeanor.

On July 27, 2022, Mendoza filed a motion to suppress all the statements and evidence obtained in relation to the vehicle search. A hearing on this motion was held on September 20, 2022. Balthazor and the K-9 handler, Trooper Brent Pothoff, testified. Balthazor generally testified that during the traffic stop there were multiple indications that Mendoza and Williams had contraband in their vehicle. These indications included Williams' hesitation in pulling over; both parties exhibiting nervousness; the faint smell of marijuana; the apparent cover odor; the car being a rental; their traveling from California, a known source state for marijuana, to Kansas City, a known destination for drug trafficking; the inconsistency as to whether they stopped the previous night; Williams not knowing how long they were going to be in Kansas City; and Williams not knowing what they were going to do once they got there.

Balthazor stated the combination of these factors raised red flags and indicated to him that there might be illegal drugs in the vehicle. At that point he informed Mendoza and Williams they were being detained while they waited for a K-9 unit. Balthazor estimated that it took about 5 to 10 minutes for the K-9 unit to arrive after that detention began.

Balthazor also spoke about the consent Williams gave him to search her luggage. Although Williams told him that he would have to ask Mendoza before searching the vehicle, Balthazor testified that he took Williams' comment to mean he could search her suitcase but needed Mendoza's consent to search the rest of the vehicle.

Pothoff testified and stated that when Balthazor called him, he was around 10 to 12 miles away and it took approximately 15 minutes for him to arrive at the scene. He testified that when he arrived, he asked Balthazor if he had probable cause to search the vehicle. Balthazor responded that he did not. After this, and once all the occupants were out of the vehicle, he deployed the K-9 who alerted to something in the vehicle. Based on the alert, Pothoff told Balthazor that he had probable cause to conduct a search.

On September 28, 2022, the district court issued its order denying Mendoza's motion to suppress. In this order, the court found that Balthazor had reasonable suspicion to conduct the K-9 sniff of the vehicle. The order articulated that this reasonable suspicion was based on the combination of the rented vehicle being in an established narcotics corridor, the vehicle coming from a known source state for marijuana that was traveling to a known destination city, the faint smell of marijuana in the vehicle, the presence of a cover odor in the vehicle, and Mendoza and Williams' stories not completely aligning. With this, the court further determined that Mendoza's constitutional rights were not violated when Balthazor extended Mendoza's detention after the completion of the initial traffic stop. In this conclusion, the court noted that it only took around 15 to 20 minutes from the beginning of the traffic stop until the K-9 unit arrived and conducted the sniff search.

A jury trial was held over the course of 2 days in March 2024. Balthazor's testimony at trial was similar to his testimony at the suppression hearing. However, at the trial, he specified that Pothoff arrived only 2 to 3 minutes after he detained Mendoza and Williams while they waited for the K-9 unit. He then testified about how they searched the vehicle and found the marijuana, mushrooms, and firearm. Pothoff's testimony at trial also parallelled his testimony from the suppression hearing. Throughout these testimonies, Mendoza's attorney renewed the motion to suppress and made continuing objections regarding Mendoza's statements and the evidence found during the search.

After deliberations, the jury found Mendoza guilty on all counts. The district court ultimately sentenced him to a total of 36 months of intensive supervised probation for the two possession with intent to distribute convictions, 11 days in jail for the carrying a concealed weapon conviction, and $5,000 in restitution for the drug stamp conviction.

Mendoza now appeals.

## ASSIGNMENT OF ERROR

Mendoza's sole assignment of error is that the district court erred in denying his motion to suppress.

## STANDARD OF REVIEW

When a motion to suppress is denied pretrial and again during trial on renewed objection, an appellate court considers all the evidence, both from the trial and from the hearings on the motion to suppress. *State v. Hammond*, 315 Neb. 362, 996 N.W.2d 270 (2023).

In reviewing a trial court's ruling on a motion to suppress evidence based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error, but whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. And where the facts are largely undisputed, the ultimate question is an issue of law. *State v. Hammond, supra.*

ANALYSIS

Mendoza assigns that the district court erred in overruling his motion to suppress because Balthazor lacked reasonable suspicion to prolong the traffic stop. He acknowledges that the initial stop of his vehicle was proper but argues the stop was improperly extended beyond the scope of the traffic violation because Balthazor did not have reasonable suspicion of further criminal activity.

Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures. *State v. Murillo-Godoy*, 32 Neb. App. 374, 998 N.W.2d 316 (2023). A seizure in the Fourth Amendment context occurs only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to leave. *State v. Murillo-Godoy, supra.* Evidence obtained as the fruit of an illegal search or seizure is inadmissible in a state prosecution and must be excluded. *Id.*

A lawful traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the mission of the stop, such as issuing a warning ticket. *Id.* When the mission of an investigative stop is addressing a suspected traffic violation, the stop may last no longer than is necessary to effectuate that purpose, and authority for the seizure thus ends when tasks tied to the traffic infraction are, or reasonably should have been, completed. *Id.* Although a police officer can inquire into matters unrelated to the justification for a traffic stop if it does not measurably extend the duration of the stop, it is unlawful to prolong a stop beyond the time reasonably required to complete the mission of the stop. *Id.*

A traffic stop can be extended if the officer has a reasonable, articulable suspicion that the motorist is involved in criminal activity unrelated to the traffic violation. *Id.* Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized hunch, but less than the level of suspicion required for probable cause. *Id.* Whether a police officer has a reasonable suspicion based on sufficient articulable facts depends on the totality of the circumstances and must be determined on a case-by-case basis. *Id.* Factors that would independently be consistent with innocent activities may nonetheless amount to reasonable suspicion when considered collectively. *Id.*

A determination that reasonable suspicion exists need not rule out the possibility of innocent conduct. *Id.* The inquiry is not whether some circumstances may be susceptible of innocent explanation, but whether, taken together, they suffice to form a particularized and objective basis for the officer to suspect a crime is, or is about to, occur. *Id.* Additionally, an officer's suspicion of criminal activity may reasonably grow over the course of a traffic stop as the circumstances unfold and more suspicious facts are uncovered. *Id.*

Mendoza asserts that our analysis should focus on whether Balthazor had reasonable suspicion of further criminal activity at the time he requested Pothoff to come to his location after his initial contact with them. We disagree. The Fourth Amendment is not implicated when an officer calls for assistance. It is implicated when there is an unreasonable search or seizure. See *State v. Murillo-Godoy, supra.* Therefore, our focus is whether Balthazor had reasonable suspicion of further criminal activity at the time he prolonged Mendoza's detention.

We determine the district court did not err in denying Mendoza's motion to suppress because Balthazor had reasonable suspicion to prolong the traffic stop beyond the initial speeding investigation. Balthazor testified that he requested Pothoff's assistance after he witnessed the vehicle hesitate to pull over, detected a faint smell of marijuana masked by a stronger cover odor, and observed Williams' hand shake when she handed him her identification. Also prior to calling for the K-9 unit, Balthazor learned that Mendoza and Williams rented the vehicle and were from California. He testified that California is a known source state for marijuana. After learning this information, he requested for Pothoff to come to his location.

After calling for the K-9 unit, but before Pothoff arrived, Balthazor continued to talk with Mendoza and Williams. These conversations further raised his suspicions because their stories were not entirely consistent. Further, Williams did not know how long they were going to be in Kansas City nor what they were doing once they arrived. He noted that this was "very, very . . . unusual" because people typically have scheduled plans when they travel across the country. More so, when Balthazor reapproached Mendoza in the vehicle, he smelled the same faint odor of marijuana.

Taking these factors together, we determine that Balthazor had an objective reasonable basis to suspect that Mendoza and Williams had illegal drugs in their vehicle. Beyond the faint smell of marijuana, Mendoza and Williams' travel arrangements were particularly suspicious. While the inconsistency in whether they stopped at the Pilot gas station may be innocently explained as a simple miscommunication regarding how long they had stopped, Williams' lack of knowledge about their trip raised clear concerns. It is certainly unusual to make a cross-country trip without knowing when you will return or what you plan to do at your destination. This, in conjunction with the smell of marijuana, the cover odor, the hesitation in pulling over, and their driving a rented vehicle through a known drug corridor, was sufficient for Balthazor to reasonably suspect that Mendoza and Williams were trafficking drugs. Accordingly, Balthazor had reasonable suspicion to prolong their detention and conduct the K-9 sniff search.

The State also asserts that even if Balthazor did not have reasonable suspicion to prolong Mendoza and Williams' detention, law enforcement would have still inevitably found the drugs because Williams consented to the search of her luggage. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Averill v. Omaha Public Schools*, 33 Neb. App. 272, 14 N.W.3d 556 (2024). Because we determined that Balthazor had reasonable suspicion to prolong the detention, we need not address this argument.

## CONCLUSION

We conclude the district court did not err in denying Mendoza's motion to suppress because Balthazor had reasonable suspicion to prolong Mendoza's detention following the end of the initial traffic stop.

AFFIRMED.